UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| KAREN A. R., | ) |
| --- | --- |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:18-cv-02024-DLP-SEB ) |
| ANDREW M. SAUL, Commissioner of the Social Security Administration, | ) ) ) ) |
| Defendant. | ) |

### ORDER ON COMPLAINT FOR JUDICIAL REVIEW

Plaintiff Karen A. R.[1] requests judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her application for Social Security Disability Insurance ("DIB") under Title II of the Social Security Act ("the Act"). *See* 42 U.S.C. §§ 423(d), 405(g). For the reasons set forth below, this Court hereby **REVERSES** the ALJ's decision denying the Plaintiff benefits and **REMANDS** this matter for further consideration.

### I. BACKGROUND

**A. Procedural History**

On April 16, 2015, Karen A. R. filed for disability insurance benefits under Title II of the Act, alleging her disability began on July 1, 2014. The claims were denied initially on July 24, 2015, and upon reconsideration on November 24, 2015.

---

[1] The Southern District of Indiana has adopted the recommendations put forth by the Court Administration and Case Management Committee regarding the practice of using only the first name and last initial of any non-government parties in Social Security opinions. The Undersigned has elected to implement that practice in this Order.

1

The Plaintiff then filed a written request for a hearing on January 4, 2016, which was granted.

On August 17, 2017, Administrative Law Judge Gladys Whitfield conducted the hearing, where Karen and a vocational expert testified. On January 10, 2018, the ALJ issued an unfavorable decision finding that the Plaintiff was not disabled as defined in the Act. The Appeals Council denied Karen's request for review of this decision on May 8, 2018, making the ALJ's decision final. The Plaintiff now seeks judicial review of the Commissioner's decision. *See* 42 U.S.C. § 1383(c)(3).

**B. Factual Background**

Karen was born on October 4, 1962, and was 51 years old at the time of the alleged onset date in 2014. [Dkt. 6-5 at 2 (R. 174).] She completed four or more years of college. [Dkt. 6-6 at 4 (R. 196).] The Plaintiff last engaged in substantial gainful activity in 2014 when she worked as a customer service representative at a call center. [Dkt. 6-6 at 5 (R. 197).] She has past relevant work history as a general duty nurse, charge nurse, fast food worker, and customer service representative. [Dkt. 6-2 at 31 (R. 30).]

## II. STANDARD OF REVIEW

To prove disability, a claimant must show she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). To meet this definition, a claimant's impairments must be of

such severity that she is not able to perform the work she previously engaged in and, based on her age, education, and work experience, she cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A). The Social Security Administration ("SSA") has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520. The ALJ must consider whether:

> (1) the claimant is presently [un]employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves [her] unable to perform [her] past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.

*Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005) (citation omitted). An affirmative answer to each step leads either to the next step or, at steps three and five, to a finding that the claimant is disabled. 20 C.F.R. § 404.1520; *Briscoe*, 425 F.3d at 352. A negative answer at any point, other than step three, terminates the inquiry and leads to a determination that the claimant is not disabled. 20 C.F.R. § 404.1520. The claimant bears the burden of proof through step four. *Briscoe*, 425 F.3d at 352. If the first four steps are met, the burden shifts to the Commissioner at step five. *Id.* The Commissioner must then establish that the claimant—in light of her age, education, job experience and residual functional capacity ("RFC") to work—is capable of performing other work and that such work exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1520(f).

The Court reviews the Commissioner's denial of benefits to determine whether it was supported by substantial evidence or is the result of an error of law. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Evidence is substantial when it is sufficient for a reasonable person to conclude that the evidence supports the decision. *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004). The standard demands more than a scintilla of evidentiary support, but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001). Thus, the issue before the Court is not whether Plaintiff is disabled, but, rather, whether the ALJ's findings were supported by substantial evidence. *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995).

In this substantial-evidence determination, the Court must consider the entire administrative record but not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute our own judgment for that of the Commissioner." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Nevertheless, the Court must conduct a critical review of the evidence before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

When an ALJ denies benefits, he must build an "accurate and logical bridge from the evidence to his conclusion," *Clifford*, 227 F.3d at 872, articulating a

minimal, but legitimate, justification for his decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in his decision, but he cannot ignore a line of evidence that undermines the conclusions he made, and he must trace the path of his reasoning and connect the evidence to his findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel,* 227 F.3d at 872.

### III. ALJ'S SEQUENTIAL FINDINGS

In determining whether Karen qualified for disability benefits under the Act, the ALJ went through the five-step analysis required by 20 C.F.R. § 404.1520(a). The ALJ first determined that the Plaintiff met the insured status requirements of the Act through December 31, 2019, and had not engaged in substantial gainful activity since her alleged onset date of July 1, 2014. [Dkt. 6-2 at 18 (R. 17).]

At step two, the ALJ found Plaintiff's severe impairments to include "mild degenerative disc disease of the lumbar spine; degenerative joint disease in the knees; fibromyalgia[2]; diabetes with associated neuropathy; hypertension; heart disease with edema in the lower limbs; migraines; vertigo; and obesity." [Dkt. 6-2 at 18 (R. 17).]

As noted above, the third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P,

---

[2] Fibromyalgia is "a disorder characterized by widespread musculoskeletal pain accompanied by fatigue, sleep, memory and mood issues. Researchers believe that fibromyalgia amplifies painful sensations by affecting the way your brain processes pain signals." Mayo Clinic: Fibromyalgia, https://www.mayoclinic.org/diseases-conditions/fibromyalgia/symptoms-causes/syc-20354780.

5

Appendix 1. The Listings include medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to the criteria for a listed impairment, then the claimant is presumptively disabled and qualifies for benefits. 20 C.F.R. § 404.1520(a)(4)(iii). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals a Listing, specifically considering Listing 1.02 for major joint dysfunction, Listing 1.04 for disorders of the spine, Listing 9.00 for diabetes, Listing 11.14 for neuropathy, Listing 4.00 for hypertension, Listings 4.02, 4.02, 4.11, and 4.12 for heart disease with edema in the lower limbs, Listing 11.02 for migraine headaches, Listing 2.07 for vertigo, and Listings 1.00Q and 4.00I for obesity under Ruling 02-1p. [Dkt. 6-2 at 22-24 (R. at 21-23).]

At the fourth step of the five-step sequential evaluation process, the ALJ weighed the medical evidence, the vocational expert's testimony, and Karen's testimony and work history, and determined that Plaintiff had the RFC to perform less than a full range of light work, except with the limitations that she:

- can stand and/or walk for six hours of an eight-hour workday with normal breaks;
- can lift and carry 20 pounds occasionally;
- can lift and carry 10 pounds frequently;
- can frequently balance;
- can occasionally stoop, kneel, crouch, and crawl;
- can occasionally climb ramps, stairs, ladders, ropes or scaffolds; and

6

- should avoid all exposure to hazardous moving machinery and unprotected heights.

[Dkt. 6-2 at 31 (R. 30).] Based on her RFC, the ALJ determined that Karen was capable of performing her past relevant work as a customer service representative. [*Id.*] Based on these findings, the ALJ concluded that Karen is not disabled under the Act. [Dkt. 6-2 at 34 (R. 34).]

## IV. DISCUSSION

Plaintiff argues generally that substantial evidence fails to support the ALJ's determination that she was not disabled, but focuses on three main contentions: 1) that the ALJ failed to evaluate Karen's absenteeism; 2) that the ALJ improperly concluded that the Plaintiff's alleged symptoms were not supported by evidence in the record; and 3) that the ALJ failed to evaluate properly Karen's fibromyalgia. The Court considers these arguments in turn below.

### i. Absenteeism

The Plaintiff first argues that even if she were able to obtain a job, she would not be able to retain it due to her schedule of recurring appointments. According to her brief, the Plaintiff asserts that she would need to attend three hours of case management per week; one hour of individual therapy per week; three hours of skill training per week; nine hours of group therapy per week; thirty minutes of medication training per month; thirty minutes of medication review per month; one hour of medication administration per month; and one hour of psychiatric evaluation per year. [Dkt. 10 at 16.] Based on the vocational expert's testimony that

7

only one absence per month would be tolerated, Karen argues that with her need to attend so many appointments she would not be able to meet the minimum requirements of employment. The ALJ's failure to discuss her absenteeism, she argues, is reversible error.

The Defendant responds that the ALJ was not required to address the Plaintiff's need for treatment appointments in his opinion. Moreover, because Karen's proposed treatment plan is for her non-severe mental impairments of depression and anxiety, the ALJ was not required to mention it. The Defendant also points out that the Plaintiff's proposed treatment plan is no longer current; at most, she presently requires 1-3 visits of varying length per month.

ALJs do not need to discuss every piece of evidence in the record. *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014), but the SSA has provided guidance as to what must be considered and articulated:

> In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

Social Security Ruling 96-8p (S.S.A. July 2, 1996). Two recent cases from this Court address this issue of whether and to what extent an ALJ must consider the ability to sustain a full-time work schedule and, although not persuasive, bear on the Undersigned's decision. In *Gary B. v. Berryhill*, No. 1:18-cv-833-JMS-TAB, 2018 WL 4907495 (S.D. Ind. Oct. 10, 2018), this Court determined that "[a]n ALJ may be

obligated to address a claimant's ability to sustain work, if the claimant presents sufficient evidence demonstrating that the ability would be precluded by treatment visits which are necessitated by the claimant's impairments." *Id*, at *4. The Court found in *Gary B.* that the claimant failed to present sufficient evidence to establish that he was unable to sustain work, in part because he received rather standard treatment with a psychiatrist every few months and weekly therapy, and the "frequency of those visits [did] not appear to be work preclusive, nor [was] there evidence that the length of those visits would make it difficult to schedule them around a full-time work schedule." *Id*, at *5.

In *Donielle H. v. Berryhill*, No. 1:18-cv-2990-JPH-TAB, 2019 WL 1614640 (S.D. Ind. Apr. 15, 2019), this Court likewise found that the claimant did not present enough evidence to establish that she was unable to sustain work because of the need to attend medical appointments. There was no evidence that treatment was needed on an emergency or unpredictable basis; the treatment visits were often short, by lasting under an hour; and there was no evidence that the treatment needed to occur during working hours or could not be scheduled around a full-time work schedule. *Id*, at *4.

Here, the only evidence that Karen submits to support her contention that she cannot sustain a full-time work schedule comes in her reply brief, which lists each specific treatment date and the duration of each appointment between January 14, 2016 and January 26, 2017. Karen did not, however, submit any other evidence, such as medical opinions from treating providers, that would indicate a

9

need for more frequent treatment or treatment that would interfere with a full-time work schedule. Moreover, the list of appointment dates that Karen submitted shows that she receives treatment approximately 1-4 times[3] per month, with all visits lasting under one hour. Karen has failed to present sufficient evidence demonstrating that her treatment plan precludes her ability to sustain work. Accordingly, the ALJ was not required to address how the Plaintiff could have maintained employment while receiving routine treatment for mental health impairments.

### ii. Evaluation of Plaintiff's Symptoms

Next, the Plaintiff contends that the ALJ wrongly assessed her credibility and improperly valued the impact of her alleged symptoms. The ALJ's credibility determinations are entitled special deference, *Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006), but the ALJ is still required to "build an accurate and logical bridge between the evidence and the result." *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000). In evaluating a claimant's credibility, the ALJ must comply with SSR 16-3p[4] and articulate the reasons for the credibility determination. *Brindisi v. Barnhart*, 315 F.3d 783, 787 (7th Cir. 2003). SSR 16-3p lays out a two-step process for

---

[3] In both April and May 2016, Karen had 4 appointments, but the fourth appointment for each month was for "medication review" that lasted 14 and 13 minutes, respectively. In all other months listed, Karen attended 1-3 treatment visits.

[4] SSR 16-3p became effective on March 28, 2016, replacing SSR 96-7p and requiring an ALJ to assess a claimant's subjective symptoms rather than his credibility. The "change in wording is meant to clarify that [ALJs] aren't in the business of impeaching claimants' character; obviously [ALJs] will continue to assess the credibility of pain *assertions* by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original). Federal courts remain bound by prior case law concerning the credibility analysis under SSR 96-7p.

evaluating a claimant's subjective symptoms: 1) determine whether the individual has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms; 2) evaluate the intensity and persistence of an individual's symptoms such as pain and determine the extent to which an individual's symptoms limit her ability to perform work-related activities. SSR 16-3p, 2017 WL 5180304 at *4.

Here, the ALJ noted that Karen suffers from degenerative disc disease of the lumbar spine; degenerative joint disease of the knees; fibromyalgia; diabetes with associated neuropathy; hypertension; heart disease with edema in the lower limbs; migraines; vertigo; and obesity. For several years, Karen has consulted numerous medical professionals, been prescribed pain medication, and received various conservative methods of treatment, such as therapy. Yet, according to Karen, she continues to suffer from diffuse body pain, frequently falls, and has regular headaches. [Dkt. 6-2 at 56-57 (R. 55-56); Dkt. 10 at 5-12, 27.]

In reviewing the medical evidence and the testimony presented at the hearing, the ALJ found that Karen's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." [Dkt. 6-2 at 30 (R. 29).] This language, however, is "meaningless boilerplate." *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010).

11

The ALJ does go on to provide an extensive review of the objective medical evidence to justify her conclusion that Karen's "allegations are not consistent with the evidence." In assessing Karen's credibility, the ALJ discussed at length her history of complaints and years of medical attention for her fibromyalgia and degenerative disc disease claims. The ALJ noted testimony and evidence from physician appointments, including reports of Karen's complaints of pain; prescriptions for pain medications; x-rays which revealed mild degenerative diseases; and the reports from consultative examinations. Finally, the ALJ concluded that Karen's allegations were not supported by the evidence.

The Plaintiff's contention is that the ALJ improperly weighed her credibility by only listing a series of mild objective findings to justify the conclusion that her complaints were not supported by the medical evidence. The Commissioner, in turn, argues that the ALJ properly considered all relevant medical evidence in the record, as laid out in the extensive recounting of Plaintiff's medical history.

While the ALJ adequately completed step one of the credibility assessment in determining whether any of Karen's impairments could produce her alleged symptoms, she did not properly complete step two of the analysis. Here, in evaluating the intensity and persistence of Karen's pain, the ALJ failed to explain which of Karen's statements were not credible and the extent to which they were not credible.

In assessing a claimant's credibility, an ALJ must explain which of a claimant's symptoms are not credible and the extent to which they are not credible.

*Martinez v. Astrue,* 630 F.3d 693, 696 (7th Cir. 2011). In *Martinez,* the Seventh Circuit reversed an ALJ's adverse credibility finding where there was "no explanation of which of [the claimant's] statements are not entirely credible or how credible or noncredible any of them are," rendering the ALJ's finding "suspended over air." *Id* at 696-97.

The ALJ appears to rely on the lack of objective medical evidence in assessing Karen's credibility regarding the extent of her pain. As outlined numerous times in this Circuit, an ALJ may not discredit a claimant's subjective complaints of pain and limitations solely because of a lack of corroborating objective medical evidence. *Hall v. Colvin*, 778 F.3d 688, 691 (7th Cir. 2015); *Villano v. Astrue,* 556 F.3d 558, 562 (7th Cir. 2009); *Carradine v. Barnhart,* 360 F.3d 751, 754 (7th Cir. 2004) ("Pain is always subjective in the sense of being experienced in the brain."); *see also Hall v. Colvin*, 778, F.3d 688, 691 (7th Cir. 2015) (noting that an ALJ erred in her "belief that complaints of pain, to be credible, must be confirmed by diagnostic tests.").

The ALJ exhaustively lists the objective evidence contained in the record and states her conclusion that Karen's statements are not credible; what the ALJ does not do is create any bridge between the two. No explanation is provided about which allegations are or are not credible, an undertaking which is required in this Circuit. Instead, the Court is left to guess which of Karen's statements are not credible and the extent to which they are not credible. As noted above, although an ALJ is not required "to address in writing every piece of evidence or testimony presented, he was required to provide 'an accurate and logical bridge' between the evidence and

13

his conclusions." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *Craft v. Astrue,* 539 F.3d 668, 673 (7th Cir. 2008). It is impossible, at this time, for the Court to assess whether the ALJ properly determined Karen's credibility, because there is no bridge between the evidence in the record and the ALJ's conclusion. On remand, the ALJ must revisit her credibility determination and decide what weight, if any, she will give to Karen's statements.

### iii. Fibromyalgia

Lastly, the Plaintiff argues that the ALJ failed to adequately address her fibromyalgia in the opinion. Karen asserts: "[o]ther than a few mentions in the summary of medical records, there is no further discussion of [Karen's] fibromyalgia nor the impact it has on her ability to maintain employment in the ALJ's decision." [Dkt. 10 at 24.] The Plaintiff maintains that fibromyalgia should be considered according to SSR 12-2p, but that the ALJ failed to consider properly whether her fibromyalgia medically equaled a listing; instead, she argues, the ALJ merely offered the conclusion that her fibromyalgia did not medically equal a listing without creating the logical bridge between the evidence and the conclusion.

The Defendant responds that the ALJ adequately followed the requirements of SSR 12-2p and, after finding that Karen's fibromyalgia was a severe impairment, conducted an appropriate credibility analysis under 16-3p. The Defendant also argues that the ALJ appropriately accounted for the Plaintiff's physical limitations, including any fibromyalgia-related symptoms, in her RFC assessment, especially with relation to postural activities and exposure to hazardous moving machinery.

14

SSR 12-2p provides that an ALJ should follow the two-step process set forth in SSR 16-3p[5] when evaluating a person's statements about her fibromyalgia symptoms and functional limitations. SSR 12-2p, 2012 WL 3104869 (July 25, 2012). Under SSR 16-3p, the ALJ must 1) determine whether the individual has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms; 2) evaluate the intensity and persistence of an individual's symptoms such as pain and determine the extent to which an individual's symptoms limit her ability to perform work-related activities. SSR 16-3p, 2017 WL 5180304 at *4. Here, the ALJ determined that Karen suffered from the medically determinable impairment of fibromyalgia.

Next, the ALJ was required to "evaluate the intensity and persistence of [Karen's] pain or any other symptoms and determine the extent to which the symptoms limit [Karen's] capacity for work." *Id*; *see also Needham v. Berryhill*, No. 1:17-cv-1492-RLY-MJD, 2018 WL 2091390, at *3 (S.D. Ind. Apr. 16, 2018) (the ALJ was required to articulate his analysis of the evidence in evaluating the intensity, persistence, and limiting effects of Needham's fibromyalgia) (citing *Dietrich v. Colvin*, No. 14–CV–1202–PP, 2016 WL 1257922, at *3 (E.D. Wis. Mar. 30, 2016) (citing *Aquino v. Colvin*, No. 12–C–4557, 2014 WL 7190890, at *11 (N.D. Ill. Dec. 16, 2014)) ("There is substantial evidence that Plaintiff suffered from fibromyalgia .

---

[5] As noted previously, SSR 96-7p was replaced by SSR 16-3p. The analysis for evaluating Karen's fibromyalgia will be the same as the analysis in section two when evaluating the credibility of Karen's statements.

. . [a]ccordingly, the ALJ was required to evaluate the intensity, persistence, and limiting effects of this condition.")).

For step two of the SSR 16-3p analysis, the ALJ offers this conclusion:

> Although there is no specific listing for fibromyalgia, the undersigned has considered the claimant's fibromyalgia under the listing of impairments in Appendix 1, and under the provisions of SSR 12-2p. There is no evidence indicating that the claimant's fibromyalgia, alone or in combination with any other impairment, has given rise to a condition of listing-level severity, and no program doctor has so advised. Accordingly, the undersigned finds that the claimant's fibromyalgia does not meet or medically equal any listing.

[Dkt. 6-2 at 22 (R. 21).] The ALJ does not explain what medical evidence or statements led to this conclusion, and does not evaluate the intensity, persistence, and limiting effects of Karen's fibromyalgia. To be sure, the ALJ does go on to outline, over a few paragraphs, Karen's treatment related to fibromyalgia, but that outline is limited to a mere recitation of the medical evidence.

As in the previous section, the ALJ fails to adequately evaluate Karen's statements regarding her pain and the limiting effects of her fibromyalgia. At the hearing, Karen testified that prolonged sitting caused her legs to go numb; that standing caused her to feel dizzy and fall frequently; and that walking lead her to trip and fall frequently (which had recently resulted in a broken foot). [Dkt. 6-2 at 56-57 (R. 55-56).] Karen testified that she used a cane to walk when going out shopping or to walk the dog with her daughter. [*Id* at 59 (R. 58).] Throughout her medical records are numerous instances of Karen complaining of diffuse joint and muscle pain; tenderness; and weakness and numbness in the lower extremities, all

16

of which are symptoms of fibromyalgia and pointed out in the Plaintiff's brief. [*See* Dkt. 10 at 5-12, 27.] The ALJ does not address these complaints, both identified in the records and during the hearing, more than mentioning them in the recitation of the medical evidence. Without an analysis of these complaints, the ALJ cannot be said to have evaluated the intensity, persistence, and limiting effects of Karen's fibromyalgia.

As the Courts in this Circuit have made clear, the task of evaluating a claimant's fibromyalgia is a difficult one, but one that must be undertaken with more than the bare minimum of analysis. This analysis is inextricably linked to evaluating Karen's credibility because of the difficulty in using objective medical evidence in relation to a condition like fibromyalgia. On remand, the ALJ should adequately consider the credibility of Karen's complaints, both in general and specifically related to her fibromyalgia, in determining whether Karen's fibromyalgia meets or medically equals a listing.

### C. Conclusion

For the reasons detailed herein, this court **REVERSES** the ALJ's decision denying Plaintiff benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence 4) as detailed above. Final judgment will issue accordingly.

So ORDERED.

Date: 7/26/2019

*Doris L. Pryor*

Doris L. Pryor
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record.